**Opinion filed September 30, 2016**



## In The

# Eleventh Court of Appeals

_____

## No. 11-16-00094-CV

_____

## IN THE INTEREST OF I.G., I.G., T.R., AND F.R. JR., CHILDREN

**On Appeal from the 326th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 7890-CX**

### M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court terminated the parental rights of the mother and the fathers of two sets of twin boys: I.G., I.G., T.R., and F.R. Jr. The children's mother and T.R. and F.R. Jr.'s father timely filed a joint notice of appeal.[1] In three issues on appeal, Appellants challenge the legal and factual sufficiency of the evidence to support termination. We affirm.

---

[1]The father of I.G. and I.G. did not appeal. Therefore, for ease of reference, we will refer to the father of T.R. and F.R. Jr. as "the father" in this appeal.

*Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2016). To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001(b).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination

may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

After a bench trial, the trial court found that Appellants had committed two of the acts listed in Section 161.001(b)(1)—those found in subsections (D) and (E). Specifically, the trial court found that Appellants had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the children's physical or emotional well-being and that Appellants had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being. The trial court also found, pursuant to Section 161.001(b)(2), that termination of Appellants' parental rights would be in the best interest of the children.

*Analysis*

The record shows that the Department of Family and Protective Services had been involved with Appellants and offered services to them prior to the intake involved in this case. At the time this case was initiated, the children were between the ages of eight months and twenty-one months old. The intake allegations related to Appellants' use of drugs, their neglectful supervision of the children, the deplorable conditions of their home, and the lack of food in the home, which allegedly resulted in the children eating feces.

At the time of removal, the mother tested positive for cocaine; the father tested positive for cocaine, methamphetamine, amphetamine, and marihuana; and all four children tested positive for methamphetamine. The drug tests conducted on the children revealed "excessive or high" levels of methamphetamine. The children were "very delayed" developmentally, particularly F.R. Jr. whose drug test results revealed a higher level of methamphetamine than the other three children. In addition to using drugs in the presence of the children, Appellants left all four children in the care of a grandmother who was legally blind, had diabetic issues, and

3

could barely walk. Appellants also failed to give the children the attention they needed and failed to provide for the medical needs of the children. One of the children had a flat or misshaped head and was supposed to receive a helmet to fix the problem. However, Appellants failed to show up for doctor appointments, and by the time that they did, it was too late for a helmet to benefit the child.

A conservatorship caseworker with the Department testified that Appellants had completed a substantial amount of the required services, had not tested positive for drugs after they began their services, and had regularly attended visitation with the children. The caseworker was concerned that, despite all of these things, Appellants were still not able to appropriately supervise all four children or to use the skills that they had been taught. The father had an extensive criminal history that included the possession of drugs, a gun violation, theft, and domestic violence.

Additionally, the conditions of the home remained a concern throughout the case; the caseworker described a cycle in which Appellants would clean the home when a caseworker pointed out concerns with the conditions of the home but would then permit the conditions of the home to again deteriorate until a caseworker again pointed out concerns. The caseworker testified that, when she visited Appellants' home two months prior to the final hearing, she observed feces on the floor; trash throughout the home; trash, leftover food, and clothes covering the floor of the room that was to be the children's bedroom; insulation coming out of the ceiling; litter boxes throughout the kitchen; dirty dishes; and "a stove open and . . . open flame on the oven," "[l]ike the burners were on" to help heat the home.

The Department's goal for the children was for the children to remain with their foster parents, who wanted to adopt all four of the children. The children had been placed with the same foster family for over a year and were doing well in that placement. The foster parents were tending to and obtaining services for the children's special needs, a task that Appellants failed to do. The foster parents

4

provided a safe, stable home for the children, and the children had bonded with the foster parents and the foster parents' two young biological children.

In their first and second issues, Appellants challenge the trial court's findings under subsections (D) and (E). Under subsection (D), we examine evidence related to the environment of the children to determine if the environment was the source of endangerment to the children's physical or emotional well-being. *In re D.T.*, 34 S.W.3d 625, 632 (Tex. App.—Fort Worth 2000, pet. denied). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the children's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re D.O.*, 338 S.W.3d 29, 33 (Tex. App.—Eastland 2011, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re D.T.*, 34 S.W.3d at 634; *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). The offending conduct does not need to be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Drug use may constitute evidence of endangerment. *Id.*

The record contains clear and convincing evidence that Appellants had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the children's physical or emotional well-being and that Appellants had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being—as found by the trial court pursuant to subsections (D) and (E) of Section 161.001(b)(1). The evidence was undisputed regarding the conditions of the home, Appellants' drug use in the presence of the children, the children testing positive for methamphetamine, and Appellants' failure to tend to the needs of the children. Consequently, we hold that the evidence is legally and factually sufficient

to support the trial court's findings under Section 161.001(b)(1)(D) and (E). We overrule Appellants' first and second issues.

In their third issue, Appellants challenge the finding that termination of their parental rights would be in the best interest of the children. We hold that, based on clear and convincing evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of Appellants' parental rights would be in the best interest of the children. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the desires of the children, as shown through the emotional and physical needs of the children now and in the future; the emotional and physical danger to the children now and in the future; the parental abilities of Appellants and the foster parents; the plans for the children by the Department; the continuing concern about the conditions of Appellants' home; the stability of the children's placement; Appellants' drug use in the presence of the children; the father's criminal history; and the acts and omissions indicating that the parent-child relationship was not a proper one, we hold that the evidence is sufficient to support the findings that termination of Appellants' parental rights is in the best interest of the children. *See id.* Appellants' third issue on appeal is overruled.

### This Court's Ruling

We affirm the trial court's order of termination.


JOHN M. BAILEY

JUSTICE

September 30, 2016

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

6